**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**UNITED STATES OF AMERICA**               )
                                          )
    **v.**                                )    **Case. No. 17-CR-118 (RJL)**
                                          )
**BRYAN DOUGLAS MOLES,**                    )
                                          )
    **Defendant.**                         )
_____)

## MOTION TO VACATE ORDER OF DETENTION AND OPPOSITION TO THE GOVERNMENT'S MOTION FOR FORENSIC SCREENING

The defendant Dr. Bryan Douglas Moles, through undersigned counsel, hereby moves this Honorable Court to vacate the Magistrate Court's revocation of his supervision and to deny the government's request that he undergo a competency evaluation.  Dr. Moles understands the nature of the proceedings before him and is able to assist in his defense.   Therefore, he meets the standard for competency as stated by the Supreme Court and there is no need for an outside competency evaluation.   Moreover, because the government has not met its burden in demonstrating by probable cause that Dr. Moles has committed a crime while on release, or by clear and convincing evidence that he has violated another condition of his release, the Magistrate Court erred in finding that a revocation of his supervision was warranted under 18 U.S.C. § 3148. Even if the court below did not err in that respect, the government still bears the burden in demonstrating that, under the factors stated in 18 U.S.C. § 3142, no condition or combination of conditions can assure the safety of the community.   The government initially agreed to Dr. Moles's release, thereby conceding that he does not pose a danger to the community nor is he a flight risk.   Although the government now attempts to distract the Court with sensationalist

1

claims, nothing material has changed that justifies revoking his release.   Because Dr. Moles does not pose a danger to the community, he should be again released on his personal recognizance so that he may return to his family in Pennsylvania and receive mental health treatment through a local hospital.

### Background

Dr. Moles was arrested in connection with the alleged offense on May 31, 2017.   On June 1, 2017, the government filed a criminal complaint charging Dr. Moles with possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and unlawful transportation of a firearm, in violation of 22 D.C. Code § 4504.02.   According to the criminal complaint, the charges arise out of law enforcement allegedly having recovered two firearms from a car that it claims Dr. Moles had parked at the Trump International Hotel in Washington D.C., and allegedly having recovered marijuana and a vaporizer smoking device in the bathroom of his hotel room.

On June 1, 2017, Dr. Moles appeared for an initial hearing in the District of Columbia Superior Court before Judge Joseph E. Beshouri, who advised Dr. Moles of the charges against him.   Eugene Ohm, Deputy Chief of the Trial Division at the Public Defender Service, was appointed as counsel for Dr. Moles.   At no time during that hearing did Judge Beshouri, government counsel, nor defense counsel raise the issue of Dr. Moles's competency.   With the government's approval, Judge Beshouri ordered that Dr. Moles be released on his personal recognizance, subject to certain conditions.

On June 2, 2017, Dr. Moles made his first appearance in federal court before Magistrate Judge Robin M. Meriweather.   Magistrate Judge Meriweather once again informed Dr. Moles of

the charges against him, his right to counsel, his right to a preliminary hearing and his right to a detention hearing.   She also engaged in a lengthy colloquy in order to determine his financial eligibility for court-appointed counsel.   Dr. Moles intelligently and coherently answered each of the questions propounded to him.   At no time during this hearing did Dr. Moles indicate to Magistrate Judge Meriweather that he did not understand his constitutional and statutory rights. At the request of the parties, the case was continued for a combined preliminary hearing and detention hearing on June 22, 2017.   With the government's approval, Magistrate Judge Meriweather ordered that Dr. Moles be released, subject to conditions.   One of those conditions was that Dr. Moles receive mental health treatment.   The court did not specify what form that mental health treatment should take (for example, whether Dr. Moles would be required to take medication), nor did it specify whether the treatment should be inpatient or outpatient.   The parties discussed with the Court their agreed-upon plan that Dr. Moles would travel to Atlanta, Georgia where he would stay with his longtime friend and would receive mental health treatment from the Veterans Affairs (VA) Hospital in Atlanta.   Neither Magistrate Judge Meriweather, the government, nor defense counsel raised any concerns with Dr. Moles's competency.

Upon hours of arriving in Atlanta, Dr. Moles reported to the VA Hospital on June 6, 2017. He agreed to be admitted for an in-patient evaluation period which would last until June 12, 2017. Dr. Moles was evaluated by hospital staff and was assigned a treatment team including a social worker and a psychiatrist.   Undersigned counsel has spoken with the assigned professionals who indicated that for the most part, Dr. Moles was cooperative and engaged in his treatment. However, Dr. Moles disagreed with the hospital about treatment in one respect.   He declined to take the medication he was prescribed because he had previously been treated with the same

medication, which had the negative side effect of making him want to commit suicide.   Dr. Moles also had trouble sleeping in the hospital.   Over his 10 years of practice as a doctor, Dr. Moles has regularly had to stay up all night in a hospital to work the overnight shifts in the emergency room. He has trouble sleeping in the hospital setting, because he associates it with having to stay up all night to attend to his patients' urgent medical needs.

After being unable to sleep for six nights, and after being repeatedly urged to take medication which made him want to end his life, Dr. Moles understandably wanted to leave the hospital.   He was discharged from the VA Hospital on June 12, 2017.   The government complains that his discharge was "AMA," or "against medical advice."   Dr. Moles understood that if he had agreed to take the harmful medicine, the "AMA" label would have been removed.

Importantly, the fact that Dr. Moles was discharged at all reflects the hospital's determination that he is not a danger to himself or others.   Under Georgia law, the hospital has authority to involuntarily commit Dr. Moles if it believes that he is a danger to himself or to others. *See* Ga. Code Ann., § 37-3-41.   Dr. Moles was discharged, rather than involuntarily committed, because after evaluating him for the six days that he was under its care, the hospital determined that he was <u>not</u> a danger to himself or to others.

On the day of his discharge, Dr. Moles met with hospital staff to discuss the discharge plan that they had designed for him.   Two follow-up appointments were scheduled, and he was prescribed medication to take on an "as-needed basis."

The following day, on June 13, 2017, Magistrate Judge Meriweather set a hearing, at the government's request, to consider whether Dr. Moles's conditions of release should be modified.

Dr. Moles was ordered to appear in-person in Washington, D.C. for this hearing, which was set for June 15, 2017.

On June 14, 2017, the government filed a motion asking the court to revoke Dr. Moles's release and to order a competency screening.

On June 15, 2017, the parties appeared before Magistrate Judge Meriweather. At that hearing, defense counsel argued that the only meaningful way in which Dr. Moles could be said to have violated his conditions of release is that he refused to take the harmful medication that the VA Hospital had prescribed him. As reported by the doctors and psychiatrists, Dr. Moles had complied with his treatment in every other respect and continues to be willing to receive mental health treatment. Dr. Moles requested that he be permitted to continue his mental health treatment on an outpatient basis. At the time, Dr. Moles was still in the process of formulating his treatment plan and did not yet have answers to Magistrate Judge Meriweather's questions regarding the details of the treatment. Magistrate Judge Meriweather ordered that Dr. Moles be detained pending trial but expressed an openness to reconsidering her ruling if a concrete plan was proposed that would ensure that Dr. Moles receives mental health treatment.

With regard to competency, defense counsel represented to the court that she had spoken extensively with Dr. Moles and did not have any concerns regarding his understanding of the nature of the proceedings before him, nor his ability to assist in his defense. At no point during the hearing did Magistrate Judge Meriweather ask Dr. Moles if he understood the nature of the proceedings before him, or whether he was able to assist in his defense. Nevertheless, based on her understanding of the record and her observations of Dr. Moles during the hearing, Magistrate Judge Meriweather granted the government's motion for an initial forensic screening, but deferred

with respect to further decisions on competency.   The initial competency screening was ordered to take place on June 23, 2017, in D.C. Superior Court.

On June 20, 2017, the instant indictment was returned.   The previously scheduled preliminary hearing for June 22, 2017 was vacated.

On June 22, 2017, Dr. Moles made his initial appearance before this Honorable Court, and was arraigned on the indictment.   At that hearing, Dr. Moles intelligently and coherently answered the Court's questions with regard to his personal, educational, and professional history. Dr. Moles stated that he served his country in the military for eight years.   He served on active duty in the United States Marine Corps from 1992 to 1996, and then in the reserves from 1996 to 2000.   Dr. Moles also stated that he graduated from Lake Erie College of Osteopathic Medicine (LECOM) in 2006.   He has been a practicing emergency room doctor for the past 10 years.

After hearing initial arguments with respect to competency, this Honorable Court cancelled the preliminary psychiatric evaluation ordered by the Magistrate Court and ordered the parties to file by June 26, 2017 any motions with regard to a more thorough psychiatric evaluation.   A motions hearing was set for June 30, 2017.

## Argument

### I.      No Competency Screening or Evaluation is Necessary

#### A.      The Government Has Not Demonstrated that Dr. Moles Falls Short of the Legal Standard for Competency

Dr. Moles meets the legal standard for competency and therefore no screening or evaluation is necessary.

The United States Code permits court-ordered psychiatric or psychological evaluations in only two instances: to determine competency, *see* 18 U.S.C. 4241, and when the defense files a

notice that the defendant intends to rely on the defense of insanity, *see* 18 U.S.C. 4242.   Dr. Moles

has not filed a notice of his intention to rely on the defense of insanity.

The test for competence is whether the accused is "suffering from a mental disease or

defect rendering him mentally incompetent to the extent that he is unable to understand the

nature and consequences of the proceedings against him or to assist properly in his defense."

18 U.S.C. § 4241(a).   According to our Circuit:

> Whether the accused suffers from a mental disorder as defined in the AMERICAN
> PSYCHIATRIC ASSOCIATION MANUAL is not decisive . . . The test of
> competency must be whether he has sufficient 'present ability to consult with his
> lawyer with a reasonable degree of rational understanding- and whether he has a
> rational as well as factual understanding of the proceedings against him.' *Dusky v.
> United States*, 362 U.S. 402 (1960). The accused must be able to perform the
> functions which 'are essential to the fairness and accuracy of a criminal
> proceeding.' *Pouncey v. United States*, 349 F.2d 699, 701 (D.C. Cir. 1965).

*Wilson v. United States*, 391 F.2d 460, 463 (D.C. Cir. 1968).

Under this standard, the proffer of Dr. Moles's counsel, coupled with Dr. Moles's

demonstrated factual and rational understanding of the charges against him, are sufficient to assure

that Dr. Moles is competent.   As the Circuit recognized, "the applicable criteria measure one's

ability to consult with his lawyer and to understand the course of legal proceedings. Thus,

counsel's first-hand evaluation of a defendant's ability to consult on a case and to understand the

charges and proceedings against him may be as valuable as an expert psychiatric opinion on his

competency."   *United States v. David*, 511 F.2d 355, 360 (D.C. Cir. 1975).   *See also*, *Watts v.

Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996) ("Because legal competency is primarily a

function of defendant's role in assisting counsel in conducting the defense, the defendant's

attorney is in the best position to determine whether the defendant's competency is suspect.").

The Magistrate Court never asked Dr. Moles whether he had trouble understanding the nature of the proceedings.   It never asked defense counsel or Dr. Moles whether he had trouble assisting in his defense.   Without making these key inquiries and disregarding defense counsel's representations that Dr. Moles met the standard for competency, the Magistrate Court erroneously ordered a forensic evaluation.   In addition to being a waste of precious government resources, the Magistrate Court's order violates Dr. Moles's constitutional rights by creating an unwarranted opportunity for the government to have access to his innermost thoughts.[1]

Dr. Moles has a distinguished history as a veteran and an emergency room doctor.   He intelligently and coherently answered this Court's questions regarding his education and professional experience at his arraignment on June 22, 2017.   He has satisfied the requirement of being "able to perform the functions which 'are essential to the fairness and accuracy of a criminal proceeding.'"   *Pouncey*, 349 F.2d at 701.   And, as already noted, defense counsel has represented that Dr. Moles understands the proceedings before him and is able to assist in his defense.   No further screening or evaluation is necessary.

### B.     As Acknowledged by the Supreme Court, A Defendant Suffering from Mental Illness Can Be Found Competent

That Dr. Moles may suffer from mental illness is not, by itself, sufficient grounds by which to conclude that he is not competent to stand trial.   *See Wilson*, 391 F.2d at 463 ("Whether the accused suffers from a mental disorder as defined in the AMERICAN PSYCHIATRIC ASSOCIATION MANUAL is not decisive.")

---

[1]   As the Court knows, a forensic screening or evaluation will involve a detailed interview of Dr. Moles by the evaluator and Dr. Moles's responses will be memorialized in the report.   That report will then be forwarded not only to the Court but also to the government.

As the Supreme Court acknowledged in *Godinez v. Moran*, 509 U.S. 389 (1993), a defendant can suffer from severe mental illness but nevertheless be found competent.  In that case, the defendant had a history of mental illness, had attempted to commit suicide, and was heavily medicated—and yet, his guilty plea was deemed valid because he met the standard for competency.   In addition, countless defendants suffering from mental illness have pled guilty or stood trial in this courthouse without being ordered to submit to a competency screening.

II.     **Dr. Moles Should Be Released Pending Trial So that He Can Continue His Mental Health Treatment**

Regardless of how the Court rules on the competency issue, Dr. Moles should be released pending trial so that he can continue to receive mental health treatment.   Even when a competency evaluation is ordered, the Court may consider a request that the treatment be outpatient and require the government to demonstrate substantial interests it seeks to protect by a custodial examination. *See, e.g.*, *United States v. Neal*, 679 F.3d 737, 740-42 (8th Cir. 2012); *United States v. Deters*, 143 F.2d 577, 583-84 (10th Cir. 1998); *see also In re Newchurch*, 807 F.2 404 (5th Cir. 1986) (requiring court to consider § 4247(b) non-custodial option and requiring government to demonstrate significant interests in commitment for government-ordered mental examination of defendant raising insanity defense).

The Magistrate Court erred in determining that Dr. Moles's release should be revoked and that he should remain in custody during the pendency of his case.   Under 18 U.S.C. § 3148(b), the Magistrate Court was only permitted to enter an order of revocation and detention if it determines that:

(1) There is—

(A)     probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B)     clear and convincing evidence that the person has violated any other condition of release; and

(2) Finds that—

(C)     based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(D)     The person is unlikely to abide by any condition or combination of conditions of release.

This standard was not met, and therefore the Magistrate Court erred in revoking Dr. Moles's release.

The government has not met its burden to show by probable cause that Dr. Moles has committed a crime while on release.   Nor has the government met its burden to show by clear and convincing evidence that Dr. Moles has violated any other condition of release.

As mentioned earlier, Dr. Moles declined the VA Hospital's treatment directive that he take the same medication that had previously made him suicidal.   He asked to be discharged from the hospital, where he had been unable to sleep for six nights.   Dr. Moles made a rational decision in not wanting to take medication that worsened his mental health, and wanting to get a good night's sleep.   He is willing and eager to continue his mental health treatment in a more constructive setting.   If released, Dr. Moles will return to his home in Pennsylvania and plans to receive mental health treatment at a local hospital.   His wife, Heather Moles, is 100 percent supportive of Dr. Moles and is committed to ensuring that he receives the treatment that he needs. After stating her ruling, Magistrate Judge Meriweather indicated that she would be open to reconsidering her decision to detain Dr. Moles if a treatment plan was proposed.

10

The Magistrate Court also erred in finding that the government met its burden under 18 U.S.C. § 3142(g), because Dr. Moles is not a danger to the community, nor a flight risk.   On June 1, 2017, when Dr. Moles appeared in Superior Court, and again on June 2, 2017, when Dr. Moles first appeared in Magistrate Court, the government was aware of the allegations recited in the criminal complaint.   Knowing these facts, the government agreed to Dr. Moles's release, and yet it now recites these same facts to justify its changed position that Dr. Moles should be detained pending trial.   A citizen's right to liberty should not be taken lightly.   Without stating a material change in circumstance, the government should not be permitted to flipflop on the question of a person's freedom.

The government attempts to justify its change in position with a number of alleged events that occurred since Dr. Moles's release.   Even taken as true, these occurrences are simply indicative of someone who suffers from mental illness.   Nothing in the record demonstrates that Dr. Moles is a danger to the community, and therefore, he respectfully requests that this Honorable Court release him on his personal recognizance pending trial so that he may continue his mental health treatment with the care and support of his family.

## **Conclusion**

For all of the foregoing reasons and other reasons that may be presented at the hearing on this motion, Dr. Moles respectfully requests that this Honorable Court deny the government's request for any sort of competency evaluation and revoke the Magistrate Court's Order of Detention.


Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
LOUI ITOH
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

12